Tilghman C. J.
This is an indictment against Jesse Sharpless and others, for exhibiting an indecent picture to divers persons for money. The defendants consented, that a verdict should go against them, and afterwards moved in arrest of judgment for several reasons.
1. “That the matter laid in the indictment is not an in- “ dictable offence.” It was denied, in the 'first place, that even a public exhibition of an indecent picture was indictable; but supposing it to be so, it was insisted, that this indictment contained no charge of a public exhibition. In England, there are some acts of immorality, such as adultery, of which the ecclesiastical courts have taken cognisance from very ancient times, and in such cases, although they tended to the corruption of the public morals', the temporal courts have not assumed jurisdiction. This occasioned some uncertainty in the law; some difficulty in discriminating between the offences punishable in the temporal and ecclesiastical courts. Although there was no ground for this distinction in a country like ours, where there was no ecclesiastical jurisdiction, yet the common law principle was supposed to be in force, and to get rid pf it, punishments were inflicted by act of assembly. There is no act punishing the offence charged against the defendants; and therefor^ the case must be decided upon the principles of the common law. That actions of public indecency, were always indictable, as tending to corrupt the public morals, I can have no doubt ; because, even in the profligate reign of Charles II. Sir Charles Sedley was punished by imprisonment and a heavy fine, for standing naked in a balcony, in a public part of the city of London. It is true, that, besides this shameful exhibition, it is mentioned in some of the reports of that case, that he threw down bottles; containing offensive liquor, among the people; but we have the highest authority for saying, that the most criminal part of his conduct, and that which principally drew upon him thfe vengeance of the law, was the exposure-of his person. For this I refer to the opinion of the judges in the Queen v. Curl, (2 Str. 792.) Lord Mansfield, in the King v. Sir Francis Blake Delaval, &c. 3 Burr. 1438, and of Blackstone in the 4th volume of his Commentaries, page 64. Neither is *102 there any doubt, that the publication of an indecent book is indictable, although it was once doubted by the Court of King’s Bench, in the Queen v. Reed, (in the sixth year of Queen Anne.') But the authority of that case was destroyed, upon great consideration, in the King v. Curl, (1 George II.) 2 Str. 788. The law was in Curl’s case established upon true principles. . What tended to corrupt society, was held to be a breach of the peace and punishable by indictment. The Courts are guardians of the public morals, and therefore have jurisdiction in such cases. Hence it follows, that an offence may be. punishable, if in its nature and by its example, it tends to the corruption of morals ; although it be not committed in public. In the King v. Delaval, &c. there was a conspiracy, and for that reason alone, the Court had jurisdiction ; yet Lord Mansfield expressed his opinion, that they would have had jurisdiction, from the nature of the offence, which was the seduction of a young woman, under the age of twenty-one, and placing her'in the situation of a kept mistress, under the pretence of binding her as an apprentice to her keeper; and he cited the opinion of Lord Hardwicke, who ordered an information to be filed against a man.- who had made a formal assignment of his wife to another person. In support of this we find an indictment in Trem. Pl. 213, (The King v. Dingley) for seducing a married woman to elope from her husband. Now to apply these principles to the present case. The defendants are charged with exhibiting and shewing to sundry persons, for money, a lewd, scandalous,, and obscene painting. A picture tends to excite lust as strongly as a writing; and the shewing of a picture, is as much a publication, as the selling of a book. Curl was convicted of selling a book. It is true, the indictment charged the act to have been in a public shop, but that can make no difference. The mischief was no greater than if he had taken the purchaser into a private room, and sold him the book there. The law is not to be- evaded by an artifice of that kind. If the privacy of the room was a protection, all the youth of the city might be corrupted by taking them one by one into a chamber, and there inflaming their, passions by the exhibition of lascivious pictures. In the eye. of the law, this would be a publication, and a most pernicious one. Then, although it- is not said in the indictment, in express terms, that the defendants published the painting, yet the averment is *103 substantially the same, that is to -say, that they exhibited it to sundry persons for money; for that in law is a publication.
2., The second reason in arrest of judgment is, that the picture is not sufficiently described in the indictment. It is described as a lewd and obscene painting, representing a man in an obscene, impudent, and indecent posture -with a woman. We do not know^ that the picture had any name, and therefore it might be impossible to designate it by name. What then is expected ? Must the indictment describe minutely, the attitude and posture of the figures ? I 'am for paying some respect to the chastity of our records. These are circumstances which may be well omitted. Whether the picture was really indecent, the jury might judge from the evidence, or if necessary from' inspection. The witnesses could identify it. I am of opinion^that the description is sufficient.
3. The third and last reason is,- that the indictment does not lay the defendants’ house to be a nuisance, nor the act of the defendants to be to the common nuisance of all the citizens, &c. The answer is plain. It is not an indictment for a nuisance, but for an action of evil example, tending to the corruption of the youth, and other citizens of the commonwealth, and against the peace, &c. In describing an offence of this kind, the technical word nuisance would have been improper. My opinion is,' that the indictment is good, and therefore, the judgment should not be arrested.
Ye ates J.
I perfectly concur in the sentiments expressed by Sir Philip Torke, in the case of the King v. Curl, (2 Stra. 790,) that although every immoral act, such as lying, &c. is not indictable, yet where the offence charged, is destructive of morality in general; where it does or may affect every member of the community, it is punishable at common law. The destruction of morality renders the power of the government invalid, for government is no more than public order. It weakens the bands by which society is kept together. The corruption of the public mind in general, and debauching the manners of youth in-particular by lewd and obscene pictures exhibited to view, must necessarily be attended with the most injurious consequences, and in such instances Courts of Justice are, or ought to be, the schools of morals. So far from the law of England being changed on this point by modern decisions, we find in the case of the King v. Wilkes in 1770, (4 *104 Burr. 2527,) who was convicted on an information folian obscene and impious libel, .called an Essay on Woman, the present objection was not taken .by his counsel. The wicked intention of' the defendants; the exhibition of the obscene painting for money to'persons unknown; and the effects of such scandalous conduct, a,r.e facts found by the jury, and. I cannot bring my mind to doubt for a, single moment, that the offence charged, falls. within coghisance of a court of criminal jurisdiction. .
The defendants’ counsel have objected, ¡that should the acts charged against them, constitute an offence at common law, they are not laid with sufficient legal certainty; and that it may so happen, that different evidence may be given to the grand and traverse jurors for the same offence. To this it has been properly answered, that the same difficulty may occur in many indictments, as for assaults and batteries, where there have been several breaches of the peace at different times, by the party charged, and only one indictment has been preferred against him. As to the defendant being twice punished for the same offence, I see no danger whatever. If one obscene, scandalous picture alone has been exhibited to view (whether on canvas, paper, or parchment, cannot be material) a conviction or acquittal on the present indietment may be pleaded in bar to a future prosecution. If more than one such picture has been exhibited they may prove the truth of their plea, of autrefoits convict, or acquit, by shewing the evidence of the specific charge made against them on their trial. The same seeming difficulty may arise in a charge of felony laid in stealing a bay horse of AB, (which surely would be sufficiently certain, without laying the particular natural marks of the horse), and yet if A B had more than one bay horse which had been stolen, the same objection might have been made as .is now taken.
This indictment has evidently been framed from the precedent in Dougherty's Cro. Circ. Comp. 315, for exposing to sale an obscene print, which it minutely follows, except so far as the clerical character is attacked, and laying the act to have been done in an open public shop of the defendant in exposing it to J N, &c. The precedent relied on,, states the exposure of the objectionable print to a single individual in an open and public shop : but here the infamous and obscene painting was exhibited and shewn for money, in a certain *105 house'to persons unknown to the inquest. The question then in this part of the case is narrowed to a single point; — Whether the exhibition of a lewd, wicked, scandalous, infamous, and obscene painting, representing, Sic. to certain individuals in a private house for money, is dispunishable by the sound principles of common law ? On this question I cannot hesitate. It is settled, that the publication of a libel to any one person renders the act complete. (4 Bla. Com. 150.) No man I is permitted to corrupt the morals of the people. Secret poi- l son cannot be thus disseminated. A slight knowledge of human nature teaches us, “ that while secresy is affected in “a case like the present, public curiosity is more strongly excited thereby, and that those persons who may ignorantly “ suppose they have had the good fortune of seeing bawdy “pictures, will not content themselves with keeping the se- “ cret in their own bosoms !” Unless we shall consider the conduct of the defendant, justifiable, and lawful in the present instance, the indictment is .supportable, if it alleges the offence as it really and in truth was* committed.
As to the nature and manner in which the painting is represented to have been made, I hold it to be sufiicient to state, that it represented a man in an obscene, impudent, and indecent posture with a woman, either clothed or unclothed, without wounding our eyes or ears, with a particular description of their attitude or posture. Why should it be so described? If the jurors are satisfied on the proof, that'the persons represented were painted in an impudent and indecent posture, will not this give the Court all the information they can require ? Some immodest paintings, it is true, may carry grosser features of indecency than others, and in fact, may produce disgust in the minds even of the most debauched ; yet if the painting here, tended to the manifest corruption of youth and other citizens, and was of public evil example to others, I think it sufficiently described. As to the exception, that the indictment does not say, that the defendants have been guilty of a common nuisance, it suffices to remark, that the. offence is not alleged as-a nuisance, but as a libel on the morals and government of the state, in the same manner ns tyas done in the case of Wilkes for his Essay on Woman.
Upon the whole, I am of opinion, that the motion in arrest of judgment be overruled, arid that judgment be rendered on the verdict.
*106 Brackenridge J. concurred, but was absent through indisposition when the opinions were delivered;
Motion in arrest of judgment overruled, and judgment on the verdict.